RICHARD A. TAMOR
TAMOR & TAMOR
The Sierra Building
311 Oak Street, Suite 108
Oakland, CA 94607
Telephone: (415) 655-1969
Facsimile: (415) 887-7658
email: rtamor@TamorLaw.com

Attorneys for Defendant
TEO MAGANA-SANCHEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>TEO MAGANA-SANCHEZ,<br><br>  Defendant.<br>------------------------------------------------------ | Case No.: CR-21-00222-EMC<br><br>DEFENDANT TEO MAGANA-SANCHEZ'S SENTENCING MEMORANDUM<br><br>Date:   January 12, 2022<br>Time:   2:30 p.m.<br>Court: Hon. Edward M. Chen |

## I. **INTRODUCTION**

In this Possession with Intent to Distribute Methamphetamine case, the parties have crafted a Rule 11(c)(1)(A) and 11(c)(1)(B) plea agreement that allows the Court to sentence Mr. Magana-Sanchez to a reasonable sentence under the sentencing factors enumerated in 18 U.S.C. § 3553(a). The United States Probation Office diligently took into consideration a variety of factors at play in Mr. Magana-Sanchez's case, including his traumatic upbringing, lack of education and stable employment, family ties, relatively limited criminal history, and most importantly his severely serious health problems

1

related to COVID-19.  Though the Probation Office recommends a sentence of 36 months in custody, the defense believes that a sentence of probation is sufficient to adequately impress upon Mr. Magana-Sanchez the seriousness of his conduct, while addressing some of the sentencing objectives of just punishment, rehabilitation and deterrence as listed in 18 U.S.C. § 3553(a).  Sentencing will occur on January 12, 2022.  He will be 53 years old.

     Although this is a non-cooperation case, Ms. Magana-Sanchez has demonstrated a level of acceptance of responsibility that is quite unusual in a case of this type.  Mr. Magana-Sanchez opted out of all litigation in this case, withdrawing from efforts to press even for further discovery, let alone challenge any searches and seizures.  He indicated his intention to plead and accept responsibility soon after being charged (negotiations with the government consumed much time due to scheduling and Mr. Magana-Sanchez's health condition due to COVID-19 and the time delay was entirely unrelated to Mr. Magana-Sanchez's desire to plead guilty and accept his punishment).  He has rejected all rationalizations for his conduct, admitted his wrongdoing openly from the day that he was arrested in East Palo Alto, California, and he has squarely faced the pain and distress he has caused and will cause his family and the general community.  He is remorseful for what he has done and he is trying to redeem himself.  PSR ¶¶ 2-4, 49.  Having contracted COVID-19 while in custody on this case, Mr. Magana-Sanchez, spent 3 months in the Intensive Care Unit with 3 weeks in an induced coma, he still requires supplementary oxygen to breath, and as of this writing he reports that his lungs have been hurting for

over a week and is due to see his doctor on Monday January 10, 2022. PSR ¶¶ 49, 54, 56, 57.

Under the totality of these circumstances, the requested sentence of probation is sufficient to serve the sentencing goals of 18 U.S.C. § 3553(a) and the defense asks that the Court impose that sentence at the time of change of plea and sentencing.

## II. ARGUMENT

**A. Sentencing Under 18 U.S.C. § 3553.**

After *United States v. Booker,* 543 U.S. 220 (2005), the Court must consider, without preferring any single one factor, the seven factors listed in 18 U.S.C. § 3553(a) in order to impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing listed in § 3553(a)(2). The seven factors listed in 18 U.S.C. § 3553(a) are:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The purposes of sentencing (Retribution; Specific Deterrence; General Deterrence; and Rehabilitation)[1];

3. The kinds of sentences available (i.e. alternatives to prison);

---

1 The four purposes of sentencing, codified in 3553(a)(2), are:
    A. "Retribution," or to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;
    B. "General" deterrence;
    C. "Specific" deterrence; and
    D. "Rehabilitation," or to provide the defendant with training, medical, or correctional

4-5. The Sentencing Guidelines and their Policy Statements (which are, after *Booker,* advisory);

6. Avoiding disparity in treatment of similar offenders; and

7. The need to provide restitution.

**(i). Factor 1. Nature and Circumstances of the Offense and History and Characteristics of Mr. Magana-Sanchez.**
 **(a). History and Characteristics of Mr. Magana-Sanchez.**

Mr. Magana-Sanchez is in dire physical health. He has had diabetes, which is comorbidity for COVID-19, for 33 years. On November 17, 2020, Mr. Magana-Sanchez was arrested for the underlying offense and housed at Santa Rita Jail. Shortly after his release on November 30, 2020, he began exhibiting COVID-19 symptoms and sought medical help but was sent home on two occasions until he was admitted to the hospital when he could barely breathe. He spent 3 months in the intensive care unit, with 3 weeks in an induced coma. The doctor's told his daughter that he was not going to live. Thankfully, Mr. Magana-Sanchez was well enough to be discharged in March of 2021. However, he still cannot breathe without the assistance of supplementary oxygen, he tires after about 20 minutes of light physical movement or speaking, and he currently takes over a dozen medications. As of this writing, Mr. Magana-Sanchez has complained that his lungs have been hurting for over a week, and he has a doctor's appointment this upcoming Monday January 10, 2022 for an evaluation of his lungs. Two of sisters passed

treatment.

away from COVID-19 in late 2021, and saying that he feels "time is up for me," he expects to be the third of his siblings to pass away from COVID-19. PSR ¶¶ 49-50, 54-55.

This is a photo of how Mr. Magana-Sanchez spends most of his days:



.

Historically, Mr. Magana-Sanchez was born on July 21, 1968, in Apatzingan, Michoacan, Mexico. His parents were never married, and his father was an alcoholic. At

the age of 11, he could not continue with his schooling and had to go to work cutting, trimming, and pruning lemons, and cutting lawns. He entered the United States in 1984 at the age of 16 and is currently undocumented. Mr. Magana-Sanchez has six siblings with whom he was in consistent contact. His brother Rodolfo Gonzalez-Sanchez was murdered in a home invasion robbery and two of his sisters, Rosa Gonzalez-Sanchez and Alicia Gonzalez-Sanchez recently passed away from COVID-19 in July and September 2021, respectively. PSR ¶¶ 42, 43, 45, 49-50.

Mr. Magana-Sanchez is now 53 years old. He married Yolanda Aguilar when he was 19 years old. They have 5 children who live in Mexico: Claudia Gonzalez (age 37), Daisy Gonzalez, (age 35), Daniella Gonzalez (age 33), Geovanni Gonzalez (age 19), and Linda Gonzalez (age 19). He has not seen these children in 5 years, but he also has a daughter, Miriam Rodriguez, with whom he resides in East Palo Alto. Mr. Magana-Sanchez has a good relationship with all his children. PSR ¶ 47.

Though Mr. Magana-Sanchez was marginally employed until he was arrested, he left school to work when he was 11 years old. PSR ¶¶ 45,61. None of these life circumstances excuses criminal behavior of course, but they do help to explain how a man who left school to work at the age of 11, had 6 children to support, and had no other marketable skills could develop such that criminal behavior becomes less easy to avoid. This is what happened to Mr. Magana-Sanchez.

///

///

### (b). Nature and Characteristics of the Offense

Mr. Magana-Sanchez and Mr. Magana-Sanchez alone bears the responsibility for his conduct. He possessed with intent to distribute methamphetamine, heroin, and cocaine. In an effort to resolve the case, however, the defense and the government arrived at a resolution that struck a compromise, shortened the case and allows Mr. Magana-Sanchez to receive a reasonable sentence in exchange for a giving up his defenses to the charged conduct. Thus, this was a case involving real compromise of trial defenses, the saving of judicial and prosecutorial resources and a fair and just sentence under the 18 U.S.C. § 3553 sentencing factors for Mr. Magana-Sanchez's conduct.

### (ii). Factor 2. The Purposes of Sentencing (Retribution; General Deterrence; Specific Deterrence; and Rehabilitation)
### (a). Retribution

Mr. Magana-Sanchez willingly pleaded guilty to a serious felony offense. He understands the seriousness of the offense, as well as the impact of his criminal history, and recognizes that he could spend a significant amount of time in custody. While not directly attributable as punishment from the criminal justice system, Mr. Magana-Sanchez contracted a life-threatening disease while at Santa Rita Jail. It has been over a year since he contracted COVID-19 and was hospitalized. He still cannot breathe without supplementary oxygen and is essentially an invalid. As of this writing, it is unclear whether Mr. Magana-Sanchez will ever fully recover. This is severe retribution for a man who, until the behavior in this case, only spent 156 days in custody for a prior offense. In light of these facts, it is the defense's position that a sentence of probation is sufficient punishment for Mr. Magana-Sanchez.

**(b). Specific Deterrence**

Again, at the time of sentencing, Mr. Magana-Sanchez will have suffered with thesevere physical consequences from having contracted COVID-19 at Santa Rita Jail after having arrested for the underlying offense. It is unclear whether he will ever get better. But it is clear that the terrible choices and actions he made in this case has already and will doubtlessly continue to prevent Mr. Magana-Sanchez from ever coming into contact with the criminal justice system ever again.

**(c). General Deterrence**

The purpose of general deterrence is to deter others from committing crime. It is inarguable that what has happened to Mr. Magana-Sanchez as a result of this offense is deterrent enough for anyone similarly minded to engage in similar conduct.

**(d). Rehabilitation**

Mr. Magana-Sanchez recognizes his wrongdoing and has accepted responsibility for his actions. He has been open about his wrongdoing with his family, friends, and the Court. Mr. Magana-Sanchez is well on his way to rehabilitation—he has fully complied with all of the conditions of his pre-trial release and has fully and openly admitted all of his wrongdoing. Still, he recognizes that much work is still needed to continue on this path and to regain the trust of people around him and put his life back together again.

**(iii). Factors 3-5. The Kinds of Sentences Available and The Advisory Sentencing Guidelines**

The parties generally agree on the following sentencing guideline calculations:

a. Base Offense Level, U.S.S.G. § 2D1.1(a)(5):                    34

      b. Acceptance of Responsibility, U.S.S.G. § 3E1.1:    -3

      d. Safety Valve, 18 U.S.C. 3553 (f)    -2

      Total Offense Level:    29

PSR ¶¶ 19-28, 84.

At a Total Offense Level of 29 and a Criminal History Category II, Mr. Magana-Sanchez's guidelines range is 87-108 months.

### (iv). Factor 6. Avoiding Sentencing Disparity in Treatment of Like Offenders

Disparate treatment of like offenders is not an issue in this case.

### Factor 7. The Need to Provide Restitution

Restitution is not an issue in this case.

## III. CONCLUSION

For the foregoing reasons, Mr. Magana-Sanchez respectfully submits that a sentence of Probation is sufficient to fulfill the statutory mandate of 18 U.S.C. § 3553(a).

Date: January 5, 2022            Respectfully Submitted,
                                            TAMOR & TAMOR
                                            _____/s/_____
                                            By: RICHARD A. TAMOR, ESQ.
                                            Attorneys for Defendant,
                                            TEO MAGANA-SANCHEZ

TAMOR & TAMOR
311 Oak Street, Suite 108, Oakland, CA 94607
Telephone: (415) 655-1969. Facsimile: (415) 887-7658